UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
NEUROLOGICAL SURGERY, P.C., JEFFREY A.
BROWN, M.D.,

                             Plaintiffs,

                - against -

SIEMENS CORPORATION,

                            Defendants.
----------------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
17-cv-3477 (ADS)(AKT)

**APPEARANCES:**
**Garfunkel Wild PC**
*Attorneys for the Plaintiffs*
111 Great Neck Road
Great Neck, NY 11021
       By:    Colleen M. Tarpey, Esq.,
              Marc Andrew Sittenreich, Esq.,
              Roy W. Breitenbach, Esq., of Counsel

**McGuireWoods LLP**
*Attorneys for the Defendant*
1345 Sixth Avenue, 7th Floor
New York, NY 10105
       By:    Philip A. Goldstein, Esq.
              Dana Rust, Esq.,
              Summer L. Speight, Esq., of Counsel

**SPATT, District Judge:**

       The Plaintiffs Neurological Surgery, P.C. ("NSPC") and Jeffrey A. Brown, M.D. ("Dr. Brown") (collectively, the "Plaintiffs") brought this action against the Defendant Siemens Corporation ("Siemens" or the "Defendant") alleging various violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and New York State common law.

1

Presently before the Court is a motion by the Defendant to dismiss the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) on the grounds that the Plaintiffs' state law causes of action are preempted by ERISA, and that the Plaintiffs failed to exhaust their administrative remedies. For the following reasons, the Defendant's motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiffs' complaint, and for the purposes of the instant motion, are presumed true.

NSPC is the largest private neurosurgery practice in the tristate area. Dr. Brown is one of the neurosurgeons in the practice.

Siemens is the administrator of a self-funded employee benefit plan (the "Plan") established pursuant to ERISA. Siemens employs Empire BlueCross BlueShield ("Empire") as its claims administrator. Empire enters into contracts with health care providers to establish and maintain a network of providers. As administrator, Empire has discretionary authority to process claims and appeals for the Plan.

The Plaintiffs do not participate in Empire's provider network. Nevertheless, the Plaintiffs allege that NSPC receives authorization and assignments from Empire patients, including Siemens employees, to receive payment directly from Siemens through Empire for medical services rendered. The Plaintiffs state that as out-of-network ("OON") providers, they are entitled to reimbursement for usual, customary, and reasonable charges less any co-payment, co-insurance, member out of pocket amount, or deductible amounts (the "UCR rate").

**1. JM – June 30, 2014**

On June 30, 2014, the Plaintiffs provided health care services to JM, who is a participant in, or beneficiary of, the Plan. The Plaintiffs state that the services provided to JM were medically necessary. JM assigned her rights to receive reimbursement from Empire to the Plaintiffs. JM also provided documents to the Plaintiffs that purportedly showed that Siemens was contractually obligated to pay for the health care services provided by the Plaintiffs.

On July 29, 2014, the Plaintiffs submitted a bill to Siemens' claims administrator for $200,000 for the medical services provided to JM on June 30, 2014. The Plaintiffs have not received any reimbursement for their claim despite numerous communications with Empire and Siemens.

On December 8, 2015, the Plaintiffs appealed their claim. The Plaintiffs allege that Siemens and Empire have not answered their appeal.

**2. JM – August 11, 2014**

On August 11, 2014, the Plaintiffs again provided health care services to JM which they state were medically necessary. JM again assigned her rights to receive reimbursement from Empire to the Plaintiffs, and provided documents to the Plaintiffs that purportedly showed that Siemens was contractually obligated to pay for the health care services provided by the Plaintiffs.

On October 6, 2014, the Plaintiffs submitted a bill to Siemens' claims administrator for an additional $200,000 for the health care services provided to JM on August 11, 2014. The Plaintiffs communicated with Siemens and Empire on several occasions. Nevertheless, Siemens has not reimbursed the Plaintiffs in full or paid the UCR rate. Instead, the Plaintiffs have received the sum of only $6,477.12 on the August 11, 2014 claim.

On August 13, 2014, NSPC appealed the claim, and it was denied. The Plaintiffs state, upon information and belief, that "appeals to Empire on [NSPC's] claims are routinely denied and/or ignored, thus rendering further appeals futile." (Compl. ¶ 63).

**B. The Relevant Procedural History**

On May 19, 2017, the Plaintiffs filed their complaint in the Supreme Court of the State of New York, Nassau County. The complaint alleges causes of action for violations of ERISA; breach of express contract; breach of implied contract; unjust enrichment; breach of N.Y. INS. LAW § 3224-a (the "Prompt Pay Law"); and for breach of contract as a third party beneficiary. The Plaintiffs seek damages and attorneys' fees.

On June 9, 2017, the Defendant removed this action pursuant to 28 U.S.C. § 1446, claiming that this Court has original jurisdiction because the case presents a federal question under 28 U.S.C. § 1331.

On July 17, 2017, before filing an answer, the Defendant filed the instant motion to dismiss the complaint pursuant to Rule 12(b)(6).

## II. DISCUSSION

**A. The Legal Standard**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. As to Whether the Plaintiffs' State Law Claims Are Preempted by ERISA**

The briefings in this case illustrate a confusion on the parties' part regarding which type of preemption is to be considered by the Court. The bulk of the parties' papers addresses "complete preemption," which is a jurisdictional concept. As the Plaintiffs have brought ERISA claims, there is no dispute as to jurisdiction. Express preemption, or defensive preemption, is the proper vehicle for the Court's analysis.

"'Complete preemption' can properly be described as a jurisdictional concept—it permits a state cause of action brought in state court to be recast 'as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'" *Chau v. Hartford*

*Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)).

That is, when a plaintiff's state law claims are completely preempted by ERISA, a federal court has jurisdiction over those claims because they are subsumed by federal law. *See Lehmann v. Brown,* 230 F.3d 916, 919–20 (7th Cir. 2000) ("[T]he phrase 'complete preemption' has caused confusion . . . . Unfortunately 'complete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field . . . . State law is 'completely preempted' in the sense that it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense."); *Lister v. Stark,* 890 F.2d 941, 943 n. 1 (7th Cir. 1989) ("The use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine.").

However, here, there is no dispute that this Court has jurisdiction because the complaint raises a federal question—a claim against the Defendant under ERISA. There is no question regarding the Court's jurisdiction, therefore the Court does not analyze the Plaintiffs' state law claims under the doctrine of complete preemption.

Instead, the Court considers whether the Plaintiffs' state law claims must be dismissed pursuant to the doctrine of defensive, express preemption. "Express preemption is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption)." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (analyzing plaintiff's motion to revive his state law claims under the express preemption doctrine where the court had jurisdiction over, inter alia, the plaintiff's ERISA

claims); *Chau*, 167 F. Supp. 3d at 570 (explaining the difference between the two types of "preemption," and applying express preemption in a similar situation); *Schultz v. Tribune ND, Inc.*, 754 F. Supp. 2d 550, 562 (E.D.N.Y. 2010) (same); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408–11 (S.D.N.Y. 2009) (analyzing defendant's motion to dismiss plaintiff's state law claims under express preemption where plaintiff also brought claims under ERISA); *cf. Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 302 (E.D.N.Y. 2014) (analyzing the plaintiff's state law claims under complete preemption to determine whether the court had jurisdiction).

### 1. Express Preemption Under ERISA

ERISA's preemption clause provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). It is not disputed that the Plan in this case is an "employee benefit plan," and thus the question is whether plaintiff's claim is based on a state law relating to it.

"A claim under state law relates to an employee benefit plan if that law 'has a connection with or reference to such a plan.'" *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.,* 50 F.3d 144, 148 (2d Cir. 1995) (quoting *Metro. Life Ins. Co. v. Mass.,* 471 U.S. 724, 739, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985)); *see also Paneccasio,* 532 F.3d at 114 (same). A state law also may "relate to" a benefit plan, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990).

Thus, ERISA "preempts all state laws that *relate to* employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *Howard v. Gleason*

*Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990) (emphasis added, internal alterations, citations, and quotation marks omitted); *see also Chau*, 167 F. Supp. at 571 ("ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well." (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S. Ct. 1549, 1553, 95 L. Ed. 2d 39 (1987)).

"Claims rooted in either state statutes or state common law theories 'may be expressly preempted if they relate to an employee benefit plan.'" *Boyle v. SEIU Local 200 United Benefit Fund*, No. 5:15-cv-517 (GLS/DEP), 2016 WL 3823007, at *2 (N.D.N.Y. July 12, 2016) (quoting *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (internal alterations omitted)). Laws that are preempted by ERISA "are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989).

The Second Circuit has articulated different standards for ERISA preemption of state statutory and state common law claims:

> As to state statutory claims, ERISA preempts those that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." [*Aetna Life Ins.*, 869 F.2d at 146]. As to state common law claims, ERISA preempts those that seek "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004); *see Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990) (ERISA preempts claims that "purport [ ] to provide a remedy for the violation of a right expressly granted by [ERISA]").

*Paneccasio*, 532 F.3d at 114.

### 2. Application to Plaintiffs' State Law Claims

The Defendant contends that all of the Plaintiffs' state law claims relate to the Plan. In opposition, the Plaintiffs argue that although their state law claims "reference the Plan, [they] are premised upon [the Defendant's] independent obligation to reimburse Plaintiffs under contract, quasi-contract, and statutory theories." (Pls.'Mem. of Law in Opp. to Def.'s Mot. to Dismiss at 7). The Court finds that all of the Plaintiffs' state law claims are related to the Plan and are therefore expressly preempted.

Here, all of the Plaintiffs state common law claims relate to the Plan and seek to rectify an alleged wrongful denial of benefits. (*See, e.g.,* Compl. ¶ 48 ("Pursuant to the terms of the relevant Siemens health plan documents and agreements, Empire, acting as Siemens' agent, was obligated to reimburse Neurological Surgery in full - or at the very least at a usual, customary, or reasonable amount - for the medically necessary health care services provided to JM."); *id.* ¶ 58 (same); *id*. ¶ 89 (stating that the breach of express contract is based on the Plan); *id.* ¶ 98 (alleging that the health care services were "covered" and thus the Defendant violated a supposed implied contract); *id.* ¶ 108 (stating that the Plaintiffs were entitled to be paid at a reasonable rate for providing services on Siemens' behalf); *id.* ¶ 121 (stating that the third-party beneficiary claim is based on the Plan)).

Furthermore, while the Plaintiffs conclusorily allege that the Defendant has an independent obligation to reimburse under contractual, quasi-contractual, and statutory theories, they provide no basis for those grounds. The Plaintiffs are unable to point to any written or oral contract. It appears that they base their contractual and quasi-contractual theories on the Defendant's pre-authorization. (*See* Compl. ¶¶ 99–101 (stating that because the Defendant provided pre-authorization and pre-certification, there was a meeting of the minds, which constituted an implied

in fact agreement)). Courts have expressly rejected this argument. *See Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y.*, 64 F. Supp. 3d 459, 466 (E.D.N.Y. 2014) ("Plaintiff argues that United already determined the medical necessity of its services to Jane Doe by pre-approving them, but any pre-approval further demonstrates how plaintiff's claims implicate coverage and benefits. (internal citations and quotation marks omitted); *Star Multi Care Servs.*, 6 F. Supp. 3d at 287 ("Here, accepting the allegations in plaintiff's complaint as true, and in a light most favorable to plaintiff, the complaint still does not allege facts to support an independent contractual obligation, but instead states that Empire 'provided authorization' for plaintiff's services. An 'authorization' plainly implicates coverage and benefits determinations . . . ." (internal citations omitted)); *id.* at 290 ("[T]he alleged "authorization" likewise describes the benefits Sarris would have received as a Plan member, and created no new benefits or obligations."). Therefore, the Defendant did not have an independent contractual or quasi-contractual duty to the Plaintiffs.

As the Plaintiff's contractual, quasi-contractual, and unjust enrichment claims all "seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA,'" *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health*, 542 U.S. at 214), they are preempted by ERISA. *See Paneccasio*, 532 F.3d at 118 ("Each claim is premised on the . . . denial of benefits under th[e] Plan; each makes explicit reference to the Plan; and each would require reference to the Plan in the calculation of any recovery. Consequently, each of Paneccasio's state law claims 'relates to' a covered plan and is preempted by ERISA." (internal citations omitted)); *Chau*, 167 F. Supp. 3d at 572 ("These claims all relate to the Plan and are preempted by ERISA, for it has long been established in this Circuit that breach of contract claims arising from a failure to pay benefits under an ERISA plan are preempted." (collecting cases)).

The Plaintiffs' sole state statutory claim is brought under N.Y. INS. LAW § 3224-a. The Prompt Pay Law requires prompt payment of any claim submitted on a standard form so long as the obligation to pay the claim is "reasonably clear." N.Y. Ins. Law § 3224-a(a). Section 3224-a(b) of the same statute indicates that the obligation to pay is not "reasonably clear" if there is "a good faith dispute" regarding, *inter alia,* eligibility or coverage. The claim itself, in effect, seeks to recover for monies owed pursuant to the Plan. Therefore, because the Plaintiffs' prompt pay law claim also relates to their ERISA claims and merely seeks an alternative cause of action for those claims, that claim is also preempted.

Other courts in this circuit who have considered this question have come to a similar conclusion. *See Neurological Surgery, P.C. v. Northrop Grumman Sys. Corp.*, No. 2:15-cv191 (DRH)(AKT), 2017 WL 389098, at *10 (E.D.N.Y. Jan. 26, 2017) ("At least two sister courts within the Second Circuit have ruled that a plaintiff's attempt to circumvent ERISA by stating a claim for recovery under New York's Prompt Payment Law are preempted by ERISA." (citing *Weisenthal v. United Health Care Ins. Co.*, Nos. 07-cv-1175, 07-cv-0945, 2007 WL 4292039, at *7 (S.D.N.Y. Nov. 29, 2007); *Berry v. MVP health Plan, Inc.*, No. 1:06-cv-120, 2006 WL 4401478 (N.D.N.Y. Sept. 30, 2006)); *Beth Israel Med. Ctr. v. Goodman*, No. 12 CIV. 1689 AJN, 2013 WL 1248622, at *4 (S.D.N.Y. Mar. 26, 2013) (finding that the Prompt Payment Law implicates coverage and benefits, and is therefore preempted); *see also Korman v. Consol. Edison Co. of New York*, 915 F. Supp. 2d 359, 370 (E.D.N.Y. 2013) (discussing a different section of the New York Insurance Law, but stating that "if New York insurance law were not preempted by ERISA here, then federal and state laws would be creating the very conflict that Congress sought to prevent in enacting ERISA's broad preemption power"). As the court said in *Berry*,

> Here, allowing plaintiffs to proceed with their state-law suit would "pose an obstacle to the purposes and objectives of Congress", [*Pilot Life*, 481 U.S.] at 52,

>because plaintiffs are attempting to utilize N.Y. INS. LAW to vindicate their rights under the relevant MVP ERISA-governed plans. Although plaintiffs cite New York statutory law in the complaint, the factual allegations reveal the true motive of this action, to wit, to recover benefits for medical services to which, plaintiffs, as assignees, believe they are entitled under the terms of the plans. Thus, plaintiffs are seeking to use N.Y. INS. LAW §§ 4301(b)(2) and 3224-a(a), as "separate vehicle[s] to assert a claim for benefits outside of ERISA's remedial scheme." *Davila,* 542 U.S. at 217–18. Thus, these causes of action are preempted . . . .

2006 WL 4401478, at *5 (internal alterations omitted).

Therefore, the Plaintiffs' state law claims are expressly preempted by ERISA. Accordingly, the Defendant's motion to dismiss those claims pursuant to Rule 12(b)(6) is granted.

## C. As to Whether the Plaintiffs Failed to Exhaust their Administrative Remedies

### 1. The Relevant Law

"[T]he federal courts—including this Circuit—have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life & Accident Ins. Co.,* 449 F.3d 435, 443 (2d Cir. 2006) (quoting *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993)). The exhaustion requirement is "purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement." *Paese,* 449 F.3d at 445.

The Second Circuit has said that:

> The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*

*Kennedy*, 989 F.2d at 594 (internal citations omitted).

Before bringing suit in federal court, a plaintiff "must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are

denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002); *see also Kennedy,* 989 F.2d at 594 ("[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy.").

Important here, failure to exhaust administrative remedies is an affirmative defense, and not a jurisdictional hurdle. *Paese*, 449 F.3d at 446.

Finally, a plaintiff can overcome this requirement by demonstrating that exhaustion would have been futile. However, "[t]he standard for demonstrating futility is very high and plaintiffs seeking to make such a showing face a heavy burden." *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, No. 09 CIV. 8944 PGG, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2011) (internal citations and quotation marks omitted), *aff'd*, 520 F. App'x 15 (2d Cir. 2013).

In order to claim that pursuit of administrative remedies would have been futile, a plaintiff must make a "clear and positive showing." *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) ("The 1997-98 correspondence did not amount to an 'unambiguous application for benefits and a formal or informal administrative decision denying benefits such that it is clear that seeking further administrative review of the decision would be futile.'" (quoting *Barnett v. IBM Corp.,* 885 F. Supp. 581, 588 (S.D.N.Y. 1995) (internal alterations omitted)).

**2. As to whether the Court Should Consider the Plan Documents**

The Court must first consider whether it should analyze the Plaintiffs' allegations in light of the requirements contained in the Plan. The Plaintiffs did not include the Plan documents in their complaint.

The Defendant states that the Plan documents show that the Plaintiffs failed to exhaust their administrative remedies. The Plaintiffs, for their part, argue that "because [the] Plaintiffs [did not have] access to the Plan document," (Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss at 12), the

13

Court should not hold the Plaintiffs to the requirements of the Plan documents.  The Court finds that it must consider the Plan documents.

The Court's holding is based upon three premises.  First, as the case law makes clear, a plaintiff must pursue all administrative remedies before bringing suit in federal court.  *Davenport*, 249 F.3d at 133.  Second, the Second Circuit has held that a plaintiff is "required to exhaust even if she was ignorant of the proper claims procedure."  *Davenport*, 249 F.3d at 134 (citing *Meza v. General Battery Corp.,* 908 F.2d 1262, 1279 (5th Cir. 1990).  Third, when deciding a motion to dismiss a court may consider documents outside the complaint upon which the plaintiff relied in bringing suit without converting the motion into one for summary judgment.  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).  In light of the fact that the Plaintiffs had to exhaust all administrative remedies outlined in the Plan whether or not they were aware of such remedies before bringing suit, they either relied on the Plan documents, or should have relied on the Plan documents.

Therefore, the Court will consider the Plan documents in analyzing whether the Plaintiffs exhausted their administrative remedies.

### 3.  Application to the Facts

The Defendant asks the Court to find that the Plaintiffs failed to exhaust their administrative options.  Specifically, the Defendant argues that the Plaintiffs failed to file their appeals within 180 days of the denial of the claims, and that they failed to file a second level appeal.  Conversely, the Plaintiffs state that it is not clear from the face of the complaint that they failed to file their appeal within 180 days; that the Plan documents ambiguous as to the requirements for a second level of appeal; and that in any event, any further appeal would have

been futile. Drawing all inferences in the Plaintiffs' favor, as the Court must do at this stage, the Court finds that the Plaintiffs have met their burden in pleading exhaustion.

The Defendant's Plan documents state that:

> An appeal on claim decisions . . . is made in writing to the applicable Claims Administrator. The appeal must be within 180 days after a denial, by writing to the applicable Claims Administrator. Except where procedures specific to CVS Caremark, MetLife Dental, and Davis Vision apply, as described above, the appeal procedures described below also apply to these Claims Administrators. In addition to a first level of appeal, the applicable Claims Administrator will offer a second level of appeal.
> . . .
> Interpretations and determinations made by the Claims Administrator or Administrative Committee, as applicable, with respect to the Plan option for which it is designated responsibility for determining appeals, will be final, conclusive and binding; unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Def.'s Ex. B at 161).

### a. As to the Appeal of the Denial of the Claim for the June 30, 2014 Medical Services

The Plaintiffs allege that they submitted a claim on or about July 29, 2014 for the medical services rendered on June 30, 2014. They do not state when their claim was denied by the Defendant. Instead, the complaint relates that they communicated with Siemens and Empire on August 21, 2014, September 29, 2014; October 7, 2014; November 15, 2014; November 19, 2014; December 9, 2014; and February 9, 2015. They state that they appealed their claim on December 8, 2015, and the appeal was ignored.

While it appears that the Plaintiffs have engaged in artful pleading in failing to state when their claim was denied by the Defendant, it is the Defendant's burden to prove that the Plaintiffs failed to exhaust their administrative remedies. *See Paese*, 449 F.3d at 446 ("[W]e hold that a failure to exhaust administrative remedies is not jurisdictional, but is an affirmative defense."); *C.M. v. Fletcher Allen Health Care, Inc.*, No. 5:12-CV-108, 2013 WL 4453754, at *9 (D. Vt. Apr.

15

30, 2013) (stating that the defendant bears the burden of establishing that the plaintiff failed to exhaust her administrative remedies (citing *Paese*, 449 F.3d at 445)); *Kinsey v. Charitable Leadership Found.*, No. 1:11-CV-0602 GTS/DRH, 2012 WL 1014808, at *2 (N.D.N.Y. Mar. 23, 2012) ("[T]he Second Circuit has been unambiguous in its statement that a plaintiff's failure to exhaust her available administrative remedies is an affirmative defense that must be pleaded and proved by a defendant . . . ." (citing *Grover v. Hartford Life & Ass. Ins. Co.,* 04–CV–1340, 2007 WL 2757963, at *2 (N.D.N.Y. Sept. 21, 2007))); *see also Defense*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The defendant bears the burden of proving an affirmative defense.").

Here, the Plaintiffs have alleged that they pursued their administrative remedies in a timely manner, and the Defendant has not proved that they did not. Accepting the Plaintiffs' allegations as true, and drawing all inferences in their favor, the Court finds that it is plausible that they filed their appeal in a timely manner because it is not clear when their claim was denied. The Court disagrees with the Defendant's contention that the Plaintiffs' allegations are conclusory. The Plaintiffs alleged that they filed their appeal on a certain date, and that the appeal was timely. The Defendant has the burden of showing that the Plaintiffs failed to administratively exhaust their claims. All the Defendant had to do was produce the explanation of benefits that denied the Plaintiffs' claim; if that denial was issued more than 180 days before the Plaintiffs filed their appeal, the Defendant would have met its burden.

Furthermore, as the appeal was ignored by the Defendant, the Plaintiffs have also made a clear and positive showing that any further appeals would have been futile. *See, e.g., Sidley-Schreiber v. Oxford Health Plans,* 62 F.Supp.2d 979, 987 (E.D.N.Y. 1999) ("Exhaustion has also been satisfied where an insurance company failed to timely respond to a claimant's written request to review its denial of benefits.") *Ritzer v. Nat'l Org. of Indus. Trade Unions Ins. Tr. Fund Hosp.,*

*Med., Surgical Health Benefit*, 807 F. Supp. 257, 260 (E.D.N.Y. 1992) (finding that the plaintiff exhausted his administrative remedies where defendant ignored his appeal (internal citations omitted)).

Therefore, the Plaintiffs have sufficiently alleged that they exhausted their administrative remedies in appealing their claim for medical services performed on June 30, 2014, and the Defendant failed to prove that they did not exhaust their administrative remedies. Accordingly, the Defendant's motion to dismiss the Plaintiffs' ERISA claims based on the June 30, 2014 claim is denied.

### b. As to the Appeal of the Denial of the Claim for the August 11, 2014 Medical Services

Similarly, the Plaintiffs did not allege when, if ever, their claim for benefits for services performed on 8/11/2014 was denied. Instead, they state that they submitted their claim on October 6, 2014, and "communicated" with the Defendant and Empire on November 15, 2014; December 9, 2014; February 9, 2015; August 3, 2015; and September 24, 2015. The Plaintiffs appealed their claim on August 13, 2015.

For the same reasons the Court found that the Plaintiffs' appeal of the June 30, 2014 claim was timely, the Court finds that the appeal of the August 11, 2014 claim was also timely. Drawing all inferences in the Plaintiffs' favor, it is plausible that they filed their appeal within 180 days after the Defendant's denied their claim. As stated above, once a plaintiff sufficiently pleads exhaustion, it is the defendant's burden to prove that the plaintiff did not exhaust their administrative remedies. The Defendant failed to do so here.

However, unlike the earlier appeal, which went unanswered, the Defendant denied the Plaintiffs' appeal of the August 11, 2014 claim. The Defendant contends that the Plaintiffs did not

exhaust their administrative remedies because they failed to file a second level appeal. The Plaintiffs, for their part, argue that the Plan is ambiguous. The Court agrees with the Plaintiffs.

The Plan documents state that "the applicable Claims Administrator *will offer* a second level of appeal." (Def.'s Ex. B at 161 (emphasis added)). However, later on the same page, the Plan states that "[i]nterpretations and determinations made by the Claims Administrator or Administrative Committee, as applicable, with respect to the Plan option for which it is designated responsibility for determining appeals, will be final, conclusive and binding; unless it can be shown that the interpretation or determination was arbitrary and capricious." (*Id.*).

In the Court's view, the Plan is ambiguous as to whether a second level of appeal is required for exhaustion. If the claims administrator's determination is final, why is a second level of appeal with the same claims administrator necessary? Furthermore, if a second appeal is merely *offered* by the claims administrator, must a claimant pursue that second level of appeal?

The Second Circuit has held that "where a plaintiff reasonably interprets the plan terms not to require exhaustion and, as a result, does not exhaust her administrative remedies, the case may proceed in federal court." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 180 (2d Cir. 2013) (internal citations omitted). Here, the Court finds that the Plaintiffs reasonably interpreted the Plan to not require a second level of appeal.

Therefore, the Plaintiffs have sufficiently alleged that they exhausted their administrative remedies in relation to the August 11, 2014 claim. Accordingly, the Defendant's motion to dismiss the Plaintiffs' ERISA claims based on the August 11, 2014 claim is denied.

### III. CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) is granted in part and denied in part. It is granted to the extent that the Plaintiffs'

state law claims are expressly preempted by ERISA and must be dismissed.  It is denied to the extent that the Plaintiffs have sufficiently pleaded exhaustion and the Defendant failed to prove that the Plaintiffs did not exhaust their administrative remedies.  Therefore, the Plaintiffs' ERISA claims survive the Defendant's motion.

This case is respectfully referred to Magistrate Judge A. Kathleen Tomlinson for discovery.

**SO ORDERED:**

Dated: Central Islip, New York

December 12, 2017

*/s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge